## Smith et al. *versus* Meldren, Adm'r.

1. A sheriff's sale of goods in the mass is not fraudulent *per se*, nor void in all instances. If the sale be thus conducted at the direction of the parties to the execution, and no one desiring to bid requests that the sale be conducted otherwise, and the sale be in other respects fair and honest in fact, it is valid, and will pass a good title to the purchaser.

2. In an action of replevin the jury scaled a verdict "for plaintiff to the amount of replevin with interest," and then separated. On bringing the sealed verdict into court on the morning after the separation, the court after instructing them to find a verdict in an exact amount, submitted to them a calculation of the amount of the replevin with interest. The jury accepted this amount and rendered a verdict therefor, upon which judgment was entered. *Held*, not to be error. The court had power to put the verdict in proper form.

October 15th, 1884. Before MERCUR, C. J., TRUNKEY, STERRETT and GREEN, JJ. GORDON and PAXSON, JJ., absent. CLARK, J., did not sit, having been of counsel.

ERROR to the Court of Common Pleas of *Armstrong county :* Of October and November Term, 1884, No. 196.

This was an action of replevin by J. L. Meldren, Sr., administrator of J. L. Meldren, Jr., deceased, against G. M. Smith, Albert Smith, Jeremiah Smith and G. M. Smith & Son, to recover certain chattels in the possession of Jeremiah Smith, consisting of the fixtures and machinery of an oil well. Jeremiah Smith pleaded property in himself and non cepit, and the other defendants pleaded non cepit and property in Jeremiah Smith.

On the trial, before BREDIN, P. J., the following facts appeared : Albert Smith and G. M. Smith were engaged in mining oil from what was known as the Morely well. For this purpose they purchased the chattels in question, consisting of the machinery and fixtures of an oil well, from Reed & Durant, but having failed to pay therefor, the latter firm obtained judgment against them on October 16th, 1877. Previous to the entry of this judgment, to wit, on October 2d, 1877, Albert Smith conveyed his lease of the Morely oil well and the machinery thereof, including the chattels which are the subject of this replevin, to his brother Jeremiah Smith, the consideration of said assignment, as set forth in the articles of agreement, being the cancellation by Jeremiah Smith of a debt of $1,800, owed by Albert Smith to his brother, Jeremiah; the latter entered into possession of the well and its fixtures. It was claimed by the plaintiff and denied by the defendants that this conveyance was collusive and fraudulent and intended to hinder, delay and defraud the creditors

[Smith v. Meldren.]

of Albert Smith and G. M. Smith.   Upon this point the testimony was conflicting.

Under an execution issued on the Reed & Durant judgment, the chattels in question were sold at sheriff's sale on November 1st, 1877, to J. L. Meldren, Jr.   The sheriff testified that at Reed's direction, he sold the chattels in bulk, without having first offered to sell them separately or in parcels.

The defendants presented the following points:

2. If the jury believe that the plaintiff has not shown any circumstance to justify a departure from the common rule that the sheriff must sell separately, or in parcels, and that Samuel M. Reed, one of the plaintiffs in the execution on which the sale was made, gave directions to the sheriff that the property should be sold in gross, and that the sheriff in pursuance of said direction, sold the same in that way, without having first offered it in parcels, the sale was a fraud in law, and conferred no title upon the plaintiff in this case, and hence the verdict must be for the defendants.

Answer. We answer that it is the duty of the sheriff to sell the personal property levied on in parcels, and not in the mass; but if the property levied on in this case was an oil well and machinery and fixtures connected therewith, such as were necessary to the operation of the well, then it was not the duty of the sheriff to dismantle the well and sell the derrick, the engine, the boiler, tubing, sucker-rods, tools, etc., separately.   If he was warranted in his discretion, at the request of the execution creditor, to sell the well, machinery, fixtures, etc., connected therewith, in one lot, the said sale, if otherwise in good faith, would pass the title of the defendants in the execution to the purchaser.   We think it would be a very unwise rule to have the sheriff sell in any other way, or to pull out and dismantle the well and machinery and sell separately, and would result in more loss to the defendants, as well as the execution creditors.

(Exception.   First assignment of error.)

4. Business dealings between brothers and other near relatives are not in themselves fraudulent.   They must be treated just as are the transactions between ordinary creditors, and where the good faith of their transactions is attacked, the fraud alleged must be clearly proved.

Answer. We affirm that, but say if, however, the jury are satisfied in this case that G. M. Smith and Albert Smith were insolvent, and knowing that an execution was about to issue by Reed & Durant, made a transfer of their property to Jerry Smith, a brother, that would be a suspicious circumstance on the question of whether the transfer was made honestly and

[Smith *v.* Meldren.]

in good faith for a valuable consideration, without intent to defraud his creditors, and may be so regarded by the jury. In other words, the jury will understand that if G. M. Smith and Albert Smith owned this property and knew that Reed & Durant were about issuing an execution against them, and made an arrangement with Jeremiah Smith, who, knowing that the sale was to be made, in order to get rid of the Reed & Durant execution, then such a transfer as that would be in fraud of the creditors, and would be worth nothing. And even if Jerry Smith paid a valuable consideration, the sale would not be good, because it would be what would be called a conspiracy to defraud Reed & Durant, by getting this property out of their clutches.

On the other hand, if G. M. Smith and Albert Smith owed Jerry Smith, he had the right to get satisfaction of his own debt by taking the property, even if in so doing he knew he would deprive Reed & Durant or other creditors of the Smiths of the property that would otherwise have been subject to their writs. In other words, a creditor is not required to stand by and allow the goods of his creditor to go to the payment of somebody else. He can make any fair arrangement by which he can take the property and apply it to his own debt, and such an arrangement would not be in fraud of other creditors, although Jerry Smith would know that Reed & Durant were creditors of Albert Smith.

We say to the jury that it is a suspicious circumstance, that parties who are insolvent, when they know that an execution is about to issue against them, or believe an execution is about to issue against them, for them to make a transfer of their property, and is to be so regarded by the jury, and is to be taken into consideration with the other evidence in deciding whether the transfer was made in good faith for a valuable consideration, or whether it was made with the intent of defrauding creditors, or whether the theory that there was a debt due and owing is a mere sham, and intended to bolster up a fraudulent claim. (Exception. Second assignment of error.)

The jury rendered a sealed verdict " for the plaintiff to the amount of replevin with interest," and then separated. On bringing the verdict into the court on the day following the separation, the court instructed them to find the exact amount. The court thereupon made a calculation of the amount of the replevin with interest ($1,504), and the jury accepted that amount, and rendered a verdict for that sum, upon which judgment was subsequently entered. (Exception. Third assignment of error.)

The defendants thereupon took this writ, assigning as error

[Smith *v.* Meldren.]

the answers to their second and fourth points, and the entry of the modified verdict after the separation of the jury as aforesaid.

*J. P. Colter* (with him *J. M. Thompson*), for the plaintiffs in error.—The sale of the goods in bulk was void, and passed no title to the plaintiff below. We were therefore entitled to an unqualified affirmance of our second point: Klopp *v.* Witmoyer, 7 Wright 219. The qualification of our fourth point was also erroneous: Reehling *v.* Byers, 13 Norris 316; Keen *v.* Kleckner, 6 Wright 529; Hopkins *v.* Beebe, 2 Casey 85; Scott *v.* Heilager, 2 Harris 238. As to our third assignment, we submit that the change in this case was not merely a change in the form of the verdict. A verdict for the amount of the replevin suggests the return of the property. A verdict in that form involved no comparison or agreement between the different values which had been placed upon the property. Finding the *value* was a distinct matter, requiring comparison and agreement. As the jury had separated, had mingled freely among the people, released from the custody of the constable, it would have been improper to send them again to the jury room to agree upon a new verdict. The court took the amount, $1,110, made a calculation of interest on it, and asked them if they were content that said amount, with its accrued interest, should be entered as their verdict, to which they assented. Under the circumstances the inquiry of the court would be equivalent almost to a decision as to the value of the property. We submit that this action went much further than merely moulding the verdict into form—it made a new verdict and a different one; the one having been for property, the other was for the value of property.

To permit the court to practically set aside one verdict and enter another and substantially different one would be to overturn in fact the theory of our jury system.

*E. S. Golden*, for the defendant in error.

Chief Justice MERCUR delivered the opinion of the court, November 10th, 1884.

It may be conceded as a general rule, in case of a sale of chattels on execution, the sheriff should sell the articles separately or in parcels. This, however, rests on the assumption that the property would thereby produce a larger sum than if sold in a lump. Whenever in fact the sale is honest and fair, and the parties to the execution request it to be sold in the latter way, and no one desiring to bid asks to have it sold otherwise, the sale cannot be declared void. Due regard

should be had to the character of the property, and the sale, if other creditors are interested, should be so made as to produce the most money. We have recently recognized the validity of a sale, free from fraud in fact, of the whole contents of a drug store, in a few lots. [Yost *v.* Smith, Kline & Co., 9 Out. 628.]

The character of the articles in this case, was such that they were very properly sold together. They constituted a lot which were used together for one purpose. A separation would have destroyed the use and purpose for which as a whole they were designed. Moreover, as the plaintiffs in error deny that the defendant in the execution was the owner of the property, they are not in a condition to take advantage of a mere irregularity in the sale which was made in a manner satisfactory to all interested therein: Klopp *v.* Witmoyer et al., 7 Wright 226.

Although there may be in the portion of the charge covered by the second assignment, an expression which, if taken alone, would be error, yet in view of the whole charge we do not think it misled the jury.

It was within the power of the court to put the verdict in proper form. This is what it did. The sum designated is such as to give the plaintiffs in error no just cause of complaint.

Judgment affirmed.