## L. A. ROGERS v. SAMUEL DAVIDSON.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 5, 1891—Decided May 18, 1891.

(*a*) The plaintiff and defendant entered into a contract, whereby the plaintiff covenanted to put up a saw-mill on defendant's lands, as soon as practicable, and, upon certain terms, to make into lumber all the pine timber on said lands:

1. The plaintiff having erected the mill and begun the making of lumber in pursuance of his contract, the contract was broken on the part of the defendant by the issuance and maintenance of writs of ejectment and estrepement at the suit of others.

(*b*) The court charged: "But if the plaintiff satisfies you that his loss was at least a certain amount and possibly a certain larger amount, if you are satisfied it was at least as large as the greater amount stated, then you would be warranted in rendering a verdict for that amount:"

2. Taken with its context, and with other instruction that the proper measure of the plaintiff's damages was compensation for the loss

actually sustained by him, in preparing for the execution of his contract and in part execution thereof, the instruction quoted could not have misled the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 267 January Term 1891, Sup. Ct.; court below, No. 45 September Term 1884, C. P.

On July 10, 1884, L. A. Rogers brought debt, afterwards amended to covenant, against Samuel Davidson. Issue.

At the trial, on November 13, 1890, it was shown in substance that on July 2, 1874, L. A. Rogers, of the first part, and Samuel Davidson, of the second part, entered into a contract in writing and under seal, whereby Rogers, the plaintiff, agreed to put up a saw-mill on lot No. 5204, in Limestone township, as soon as reasonably practicable, and to "manufacture" the pine timber owned by Davidson, the defendant, on that lot and the one adjoining, No. 5207, in a manner and on terms specified; the plaintiff to furnish all the teams and labor required, and to deliver the lumber on the bank of the Allegheny river at Tidioute.

The plaintiff began preparations to perform his contract; erected a saw-mill on lot No. 5204; repaired the buildings, and commenced to stock the mill; beginning to cut lumber about October 1st, the same year. When he had cut about 30,000 feet of lumber and had logs cut in the woods for about 60,000 feet more, writs of ejectment and estrepement for lot No. 5204 were served upon him and the defendant at the suit of Henry & Parmlee. The writ of estrepement was modified on December 12, 1874, so as to permit the plaintiff to take away the lumber made from logs cut prior to June 20, 1874, and to saw and remove the lumber from logs cut prior to that date.

On November 20, 1874, an ejectment, at the suit of L. F. Watson, was brought against Davidson, the defendant herein, and others, for tract No. 5207. Rogers, the plaintiff, was not then occupying that lot, but remained on lot No. 5204, until in the following spring he had worked off the lumber permitted by the order modifying the writ of estrepement, when he removed his mill and other property and disposed of it from time to time as he could. The ejectment cases were tried

Charge of Court below.

in 1877 and 1878; that brought by Henry & Parmlee for lot
No. 5204 terminating in a verdict and judgment for the plaint-
iffs therein, under which they were finally put in possession.

At the close of the testimony, the court, MEHARD, P. J.,
after reading the contract, instructed the jury in part as fol-
lows:

As we construe this contract, it became the duty of the plaint-
iff in this case, under it to manufacture the pine timber on
lots Nos. 5204 and 5207, according to the terms of the con-
tract; and also, to manufacture the other timber specified there-
in, according as it is stated in this contract.   That is the
meaning of this contract as we understand it.   The expression
that is used in the first clause, or in the premises, " and manu-
facture the pine timber owned by the second party on that lot
and the one adjoining, No. 5207," does not mean, as we under-
stand it, that the plaintiff, Mr. Rogers, agreed to manufacture
so much of the pine timber as belonged to the defendant, Mr.
Davidson, but that he would manufacture the pine timber on
those lots which belonged to the defendant, Mr. Davidson. . . . .

The duty of Mr. Davidson, under the contract, corresponded
to that of Mr. Rogers; they were correlative.   Therefore, un-
der this contract, Mr. Rogers acquired a right in the nature of
an irrevocable license to go upon the land, to take the timber
and manufacture it into lumber, and to deliver it at Tidioute.
And it thereby became the duty of Mr. Davidson, with
whom the contract was made, to see that Mr. Rogers would be
protected in that right.   If Mr. Davidson failed to do so, he
failed to perform his contract.   This being under seal, then, he
broke his covenant as therein claimed, and is guilty of a breach
of the covenant for which he must compensate the plaintiff in
damages.

The defendant gives evidence, as already mentioned, that,
shortly after Mr. Rogers commenced operations on this land,
an action of ejectment was brought against Mr. Davidson, by
other persons claiming title to it paramount to his ; and that,
accompanying this writ of ejectment, there was a writ of es-
trepement, which was served upon the plaintiff in this case and
upon Mr. Davidson, whereby Mr. Rogers, the plaintiff, was pre-
vented from cutting any further timber on tract No. 5204.  Mr.

Charge of Court below.

Rogers testifies that he requested of Mr. Davidson that he should take such proceedings as would be necessary to free him from the restraint placed upon him by virtue of that writ of estrepement, so he might go on and fulfil his contract; but that Mr. Davidson refused to do so, or neglected to do do, and never did do so, as matter of fact. Neither is there evidence in the case to show that he did so, or attempted so to do. Mr. Rogers testifies that he was ready and willing to go on with the completion of his part of the contract. Now, gentlemen of the jury, this is not a fact in dispute, as I understand it, with regard to these writs, and with regard to the fact that the plaintiff in this case was prevented from carrying out his part of the contract, by being stopped by the writ of estrepement. If our construction of the contract is correct, that constituted a breach of the defendant's covenant, and would entitle the plaintiff here to recover whatever damage he sustained by reason of that breach.

The question, then, which follows, is that of the amount of damage which the plaintiff sustained; the amount of compensation which he is entitled to have by your verdict in this case. On the part of the plaintiff, considerable evidence was introduced tending to show the amount of profit which the plaintiff could have made, and would have made, had his contract been carried out. But you probably already clearly understand that that evidence has been withdrawn from your consideration; as that, in our view of the law, is not the correct basis for estimating the amount of damage the plaintiff, in this case, sustained. . . . .

We think that the true measure of damage in this case is compensation; not for anticipated gains, not for profit the plaintiff hoped to make, or might be able to prove that he could have made out of this contract, but simply compensation for his actual loss by reason of the preparations he made for the carrying out of his contract; that is, the procuring of the mill, the conveying of it to the land, the erecting of the mill, with the preparation of a proper building for receiving it; and the other preparations that he made by way of procuring teams and other means for carrying out his contract; and then, when prevented from carrying it out, his expense of taking down and hauling away the mill machinery and the depreciation of that

Charge of Court below.

machinery; the provision he had made for the maintaining of his hands during the fall and winter; the provision he had made for the maintaining his teams during that time in carrying out his contract. These are the things that you are to consider; that is to say, you are to consider how much expense the plaintiff in this case was at, in this preparation and in the removing of his machinery away, and the depreciation in the actual value of the property necessary for the carrying out of his contract, between the time it was purchased and put in place and the time when it was removed and disposed of by him. And the difference in that value, together with the amount of expense which was lost by the loss of the opportunity to manufacture the lumber, is the plaintiff's damage arising from the breach of the contract. . . . .

—After referring to the testimony as to the amount of lumber made for the plaintiff, under the contract, the court concluded:

[Gentlemen of the jury, the learned counsel for defendant calls the attention of the court to the indefiniteness of the testimony on behalf of the plaintiff; and we are asked to instruct you with regard to that. We say to you that it is incumbent on the plaintiff in this case to show to you affirmatively what his actual loss was. By that we do not mean to say that it is incumbent on the plaintiff to show to you, to a precise amount in dollars and cents, what his loss was before he can recover anything. But the plaintiff should satisfy you that his loss was a certain amount; that it was, at least, as great as a certain amount before you would render him a verdict for that amount. If there is uncertainty, and you are left to conclude between a smaller sum and a greater sum, and if that uncertainty arises from indefiniteness of the plaintiff's testimony, he could not complain if you only allowed the smaller amount and not the larger. But if the plaintiff satisfied you that his loss was at least a certain amount and possibly a certain greater amount, if you are satisfied that it was at least as large as the greater amount stated, then you would be warranted in rendering a verdict for that amount. In other words and in a word, you are to determine, not by a guess, but by the evidence in this case, how much damage the plaintiff has sustained.] [2]

The defendant requests the court to charge:

Opinion of the Court.

1. That under the pleadings and all the evidence in this case the plaintiff is not entitled to recover, and the verdict must be for the defendant.

Answer: This request is refused.[1]

2. If the first point be refused, then the court is requested to charge as follows: That the plaintiff can recover, in no event, more than the loss actually sustained by him in preparing for the execution and executing the contract, in excess of the amount received by him from the defendant, in money, labor and goods on account of the contract.

Answer: This request is affirmed. This is the correct measurement of damages on the part of plaintiff's claim, as regards the breach of the covenant simply; but it does not include the amount which the plaintiff is entitled to recover for the lumber sawed and delivered at Tidioute; that of course, the plaintiff is entitled to compensation for; and you will make, as I have said, the proper deduction for the amount of payment made to plaintiff, either directly or indirectly, by the defendant.

—The jury returned a verdict for the plaintiff for $3,862.41. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The answer to the defendant's point.[1]
2. The portion of the charge embraced in [ ][2]

*Mr. John P. Vincent,* for the appellant.

*Mr. W. M. Lindsey* (with him *Mr. Jas. O. Parmlee*), for the appellee.

Counsel cited: Watson v. O'Hern, 6 W. 362; Koch's App., 93 Pa. 434; Penn Iron Co. v. Diller, 113 Pa. 635; Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 105 Pa. 609.

PER CURIAM:

The plaintiff entered into a contract with the defendant by which the plaintiff was to put up a portable saw-mill on tract No. 5204, as soon as reasonably practicable, and manufacture for the defendant the pine timber owned by him on that tract, and also upon tract No. 5207. The plaintiff erected the saw-mill, and commenced the manufacture in pursuance of his contract, when he was stopped by a writ of ejectment, followed

by a writ of estrepement as to tract No. 5204, and subsequently by a writ of ejectment as to the other tract. A recovery was had in the first case for the plaintiffs therein. This put an end to the plaintiff's operations under his contract, and he now sues to recover damages for his loss sustained by reason thereof.

It needs no argument to show that the failure of the defendant's title compelled the plaintiff to cease his operations. The mill, as before observed, was placed, as it was agreed that it should be placed, upon No. 5204. Upon this tract he could not cut a stick of timber after the service of the estrepement. Nor do we think he was bound to take the risk on No. 5207 after the writ of ejectment. His abandonment of his operations was therefore compulsory, and was the fault of the defendant. It follows, that he was entitled to recover the loss sustained in putting up his mill, and equipping himself to perform.

Under the circumstances, we do not think it was error to decline to instruct the jury to find for the defendant. Nor do we see any substantial error in the instruction in regard to the measure of damages : see second assignment. The defendant's second point which raised this question was correctly answered, and that portion of the general charge quoted in this assignment, while not entirely free from criticism, yet, taken in connection with the answer to the defendant's second point, could not have misled the jury.

Judgment affirmed.