# Com. Title Ins. & Trust Co., Appellant, *v* Gray.

*Will—Devisavit vel non—Witness—Opinion on sanity, foundation for.*

Where a witness had frequent intercourse with decedent and abundant opportunity to observe his condition and note the changes in it during the last years of his life, and testified to specific acts and conversations which formed a basis for an inference that decedent was of unsound mind, a sufficient foundation has been laid to permit the witness to give his opinion respecting the sanity of the decedent at the time of the execution of the alleged will.

The admissibility of such evidence is a matter for the court, its effect exclusively for the jury.

*Assignment of error—Practice in Supreme Court.*

An assignment of error to the admission of evidence which does not quote the evidence admitted, is not in compliance with the rules of the Supreme Court or in proper form to be considered.

*Exception to evidence—Record.*

Where the record shows that a deposition was read, that objection was made to opinions therein expressed as to testamentary capacity which was overruled by the court, and that an exception was taken to the ruling of the court, the record is sufficient to warrant its consideration by the Supreme Court, although the exception, from its position on the record, might have referred to the admission of another question.

*Admission of deposition—Infirm witness.*

The deposition of an infirm witness taken in the orphans' court on an application for an issue to determine the validity of a will, was admitted in this case on the trial of the issue in the common pleas.

*Evidence, refusal to admit, when no cause for reversal.*

The refusal to allow a question which, in view of the subsequent testimony of the witness, did not injure the party complaining, is no cause for reversal.

Argued Jan. 6, 1892. Appeal, No. 303, Jan. T., 1891, by plaintiff, from judgment of C. P. No. 1, Phila. Co., June T., 1887, No. 850, on verdict for defendant, in issue *devisavit vel non.* Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The following facts appear by the record: Martin Gray died Oct. 7, 1886, leaving to survive him one son, William Henry Gray, the defendant, and three grandchildren, children of defendant, and an estate of about $4,000. On Sept. 7, 1886, he executed the alleged will, by which he gave $50 to appellee,

$500 to a grandson, $300 each to the two granddaughters, with cross remainders among them in case of death in minority, or in case of death of all of them, to the church of Gesu. The sum of $100 was bequeathed to that church and the same sum to another church for masses. The residue was given in fee to Rev. Burchard Villiger, S. J., of the church of Gesu. Letters were granted to James Murphy, one of the executors named. Subsequently defendant filed a petition in the orphans' court alleging, *inter alia*, mental incapacity. The executor filed an answer denying in general terms the allegations of the petition. Testimony was ordered to be taken before an examiner. The executor testified that in his opinion decedent was insane when the paper was executed; that he had filed the answer because he had thought it was his duty to defend the will. His evidence was taken in the form of depositions, as was also that of Elizabeth Sisco. An issue was granted, with the Commonwealth Title Insurance & Trust Co., administrator *d. b. n. c. t. a.* (the executor having died), as plaintiff.

On the trial, before BREGY, J., defendant called, among others, William Coleman, who testified that he had known decedent for almost six years, and had seen him frequently, sometimes every day; first got acquainted with him when his son Edward died, he was then sometimes very rational, at other times quite violent; saw a change when his wife was sick; he thought his son William was robbing him by illuminating the house, when only one gas-light was burning; another time he said he was going to Ireland in the morning, and immediately afterwards said he would visit the witness on the following Monday. ["Q. From the acts that you have narrated of Martin Gray and his language both before and after his wife's death, was he, in your opinion, a person of sound mind?"] Objected to, objection overruled and exception. ["A. I do not think he was capable of transacting any business six months previous to his death."] [3]

Francis Colket testified that he became acquainted with him in 1865; lived next door to him for fifteen or sixteen years, and talked with him every night. He was an intelligent and hard working man until his son Edward died, then he became a little distressed. He moved away then and witness did not see him very much. After that a daughter died and he became

more distressed. About the time of his wife's death he lost his voice and became quite queer. " Q. Tell the court and jury what change you observed in his actions, and in his speech; what he did and what he said, say after the death of his wife, that was different from what he used to do before ? A. Some days he would come in ; he owned a farm in Bucks county; had money enough to buy the whole row. Q. He would say that? A. Yes, sir. Maybe next day he would come in and put out a poor mouth ; he hadn't any work and wasn't able to work, and his family did so and so, gone back on him, and he couldn't work. I said, ' What is the use of working ? ' 'Aint got one cent to rub against another.' That would be the way most of the time. When he came there I would run out of the house, because if you did not coincide with him, say yes or no to everything he said, you would have a fuss. That was the kind of a man he was. Q. What else can you recollect ? A. It would take a volume to hold it. Banshees and witch-crafts and one thing another. That was all his conversations. You couldn't get shut of him. Q. What did he say about ban-shees and witchcrafts ? A. He said one time he was putting up in Ireland under a bridge and the carpenters were there, and there was a banshee up on top the bridge throwing stones down on the carpenters. [Q. From the acts that you have related, from what he said to you, in your opinion was he of sound mind from the time of his wife's death up to the time of his death?] Objected to. [The Court: He has a right to say whether from what he has described to the jury as what he saw this man do, he believes him to be sane or insane.] Ob-jection overruled and exception. [A. I believe him to be insane."] [4]

Defendant offered in evidence the deposition of James Mur-phy, the executor, taken by the examiner in the proceedings in the orphans' court, said executor being now dead; objected to, objection overruled. [5]

The deposition was then read. During the course of the reading of the above deposition Mr. Gorman objected to the expression of opinion contained therein.

The Court: He must not express his opinion. He must give the acts and then express his opinion from them.

Mr. Gorman further objected to the question [" Did he

ever say anything to you how he wanted his property divided after his death ? "] [6]

Objection overruled and exception for plaintiff.

The deposition closed as follows : [" Q. From what you so long have known of the man, do you believe that he would have cut his only child off with fifty dollars if he had been in his sound mind? A. I do not, as his son is worthy of his property and needs it, being a poor working man."] [7]

Mr. Dolman proposed to read a similar deposition of Elizabeth Sisco. Mr. Gorman objected, because the witness is living and her deposition should have been taken in the ordinary way.

The Court: This is not her deposition at all ; this is her testimony taken in another branch of this suit. Where does your right come to read that unless the person is dead or inaccessible, so that you cannot get her testimony now?

Mr. Dolman : We shall prove that she is sick in bed. We do not have to take her testimony over again in the common pleas case which was sent from the orphans' court.

Mr. Lowengrund : It is proposed to show not only that the witness is ill, but that she is aged and is in the jurisdiction and has been subpœnaed, but has lost her memory for events and is now incapable of testifying.

The evidence was that Mrs. Sisco was over seventy years, that she had been ailing for some time and was in bed from general debility, had been there for the last three days ; no doctor had been called in, but would be unless she got better; and her memory was affected. Objections renewed but overruled. Her testimony was to the effect that decedent was crazy. [8]

One of plaintiff's witnesses was asked : [" Q. From your observation of Mr. Gray from the thirty years that you have known him, or whatever time you have known him, what is your opinion of his mind—his sanity. Do you consider him of sane mind, competent and willing to take care of himself and his property ? "] [9] Objected to. Objection sustained. Exception. By the Court : " Q. Did you ever see Mr. Gray do any act that you thought was different from the action of a sane man. A. Never in my life."

The court refused binding instructions for plaintiff. [10]

Verdict for defendant and judgment thereon, whereupon plaintiff appealed.

*Errors assigned* were (1, 2, 6,) admission of certain testimony, quoting the questions but not the answers; (3, 4, 7,) rulings on evidence, quoting questions and answers as above in brackets; (5, 8,) admission of depositions, mentioned above, without quoting bills of exception or evidence; (9) refusal of question as above, quoting the question but not the bill of exception; (10) refusal of point, quoting it.

*F. Carroll Brewster*, *William Gorman* with him, for appellant.

*Ernest Lowengrund* and *John Dolman*, for appellee.

OPINION BY Mr. JUSTICE McCOLLUM, July 13, 1892.

The first, second and sixth assignments of error are not in conformity with the rules and will not, therefore, be considered: Hawes v. O'Reilly, 126 Pa. 440; Battles v. Sliney, Ibid. 460. The fifth assignment was abandoned on the argument, and the refusal to allow the question contained in the ninth did not, in view of the subsequent testimony of the witness, injure the appellant.

The third and fourth assignments relate to the competency of the persons named in them to express an opinion respecting the sanity of the testator. These persons were intimately acquainted with Martin Gray, Coleman for six and Colket for twenty years immediately preceding his death. They had frequent and friendly intercourse with him and abundant opportunity to observe his condition and note the changes in it during the last years of his life. From this acquaintance and observation they formed opinions respecting his sanity at the time of the execution of the contested will, which they were allowed to express on the trial. These opinions were admitted under objection by the appellants and it is now argued that a sufficient foundation was not laid for them in the testimony of the witnesses concerning the actions of the testator and their acquaintance and conversations with him. In this contention we do not concur. We cannot say that the testimony affords no basis for an inference that he was of unsound mind. We have carefully examined it and are satisfied that in the admission of the opinions complained of in the third and fourth

assignments no error was committed. These opinions were proper for the consideration of the jury and it was their duty to scrutinize and weigh them in connection with the facts on which they were formed. Their admissibility and their effect were distinct matters, the former was a question for the court and the latter was exclusively for the jury.

The last question and answer in the testimony of James Murphy and embraced in the seventh assignment were clearly inadmissible. A belief respecting the sanity of a testator founded on a provision in his will is neither satisfactory nor competent evidence. In this case the witness was asked whether he believed the testator " would have cut his only child off with fifty dollars if he had been in his sound mind," and the reply was " I do not, as his son is worthy of his property, being a poor working man." Certainly the right of a citizen to dispose of his property as he chooses cannot be frittered away on such testimony as this. It is proper to say that the counsel for the appellee do not contend that the evidence complained of was competent, but they allege that it was not excepted to, and for that reason cannot be considered here. In this contention they are not sustained by the record. It shows that the deposition was read, that objection was made to the opinions therein expressed, and to the question relating to the testator's declaration about the division of his property, and that an exception was taken to the ruling of the court, upon the objections. It does not show that any portion of the deposition was rejected or omitted. The remark of the learned judge referred to the order rather than to the competency of the testimony and was to the effect that the evidence as to acts should precede the opinions based on them.

No error was committed in the admission of the deposition of Elizabeth Sisco. The evidence relating to her condition justified the ruling of the court.

We think the case upon the evidence was for the jury. With the contradictions in the evidence and the credibility of the witnesses we have nothing to do. These are matters peculiarly within the province of the jury.

The seventh assignment is sustained, and the other assignments are dismissed.

Judgment reversed and a new venire ordered.