# Knights of Pythias Benevolent Association of Coal Centre, Penna., Appellant, v. R. L. Leadbeter, Samuel Abercrombie and Elah Hicks.

*Easements—Adverse user of spring water—Question for jury.*

The right of plaintiff to an easement in the water of a certain spring, the use of which had been purchased by defendant from the owner, being in issue it was held necessary for the plaintiff, in order to establish his claim as against the purchaser, to show that either he or his predecessors in the title had acquired such right of easement against the owner of the spring or his predecessors in title.

The evidence disclosing that the plaintiffs' right, if it existed at all, was by way of adverse user, such question involved matters of fact necessarily

to be submitted to the jury; and adequate instructions being given as to what constituted adverse user the question was properly left to the jury.

*Practice, C. P.—Evidence—Reading notes of testimony of absent witness.*

Proof having been made of service of a subpœna on a witness and of his inability to be present at court by reason of illness, it was not error to permit his testimony taken on a former trial of the case to be read.

*Practice, C. P.—Evidence—Proper rebuttal.*

A witness cannot be called in rebuttal to give what was in effect but a repetition of what she had testified to in chief.

*Municipal law—Evidence—Acts and declarations of municipal officer— Loose declarations.*

The acts of officers of a municipal corporation in the line of their official duty, and within the scope of their authority, are binding upon the body they represent; and declarations and admissions accompanying such acts as parts of the res gestæ calculated to explain and unfold their character, and not narrative of past transactions, are competent evidence against the corporation, but to render such declarations and admissions evidence they must accompany acts, which acts must be of a nature to bind the corporation.

A burgess has no authority to prejudice the borough's rights by loose declarations not made in connection with the act complained of in the suit nor occurring in the performance of an official duty.

*Practice—Isolated portions of charge—Not properly to be excepted to.*

It is always unsafe as well as unfair to the trial judge to select a single sentence from the body of his charge, sever it from the context and undertake to construe it by itself without regard to what he may have said in the same connection or in other portions of his charge.

Argued April 20, 1896.    Appeal, No. 71, April T., 1896, by plaintiff, from judgment of C. P. Washington Co., Nov. T., 1894, No. 23, on verdict for defendants.    Before Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ. Affirmed.

Trespass for obstructing plaintiff's user of the waters of a certain spring.    Before McIlvaine, P. J.

It appeared from the pleadings and evidence that: The borough of Coal Centre obtained by grant from one Crothers the right to use a certain spring located on his land.    This land had been previously owned by one Jackman.    Prior to the bringing of this suit water had been running for many years through a pipe over another route; this pipe passed through plaintiff's land and plaintiff's predecessor in the title (Thomas Piper),

had the use of the water as well as the borough. The borough on obtaining the grant from Crothers abandoned and cut off the old pipe and, through defendants acting as its agents, prevented plaintiff from reconnecting the old pipe at the spring, which is the trespass complained of against plaintiff's alleged easement claimed by adverse user.

Defendants, acting for the borough, contended that the prior use of the old pipe was a permissive one subject to revocation by the owner of the spring, and that neither the use of the water by the borough nor by Piper, the plaintiff's predecessor in the title, nor by plaintiffs themselves, had ever been an adverse one, but under a license revocable at will by the owner of the spring. It was conceded that there had been an open notorious user of the water both by the borough and the plaintiff and its predecessor in the title. The question turned on whether this use was permissive or adverse and hostile. The court below left the question of adverse user to the jury under the evidence and with proper instructions as to the law governing such use, instructing them : " If you find that at the time this pipe was disconnected the plaintiff only had a privilege and not a right —a revocable license—then of course you will find for the defendants."

The defendants' points, all of which were affirmed and which affirmance was not assigned for error, were as follows :

The defendants' counsel respectfully request the court to charge the jury as follows :

1. The borough counsel having purchased from J. B. Crothers the use of the spring in question, it is necessary for the plaintiff in order to establish a right to the water of the spring as against the borough, to show that the plaintiff or its predecessors in title had acquired such right as against Crothers. *Answer :* Affirmed.

2. If the use of the water of this spring made by Thomas D. Piper, plaintiff's predecessor in the ownership of its house and lot, was not accompanied by a claim on his part of a right to continue such use, but was recognized by him as being a mere permissive privilege, then such use, even though continued for more than twenty-one years, would not give to Mr. Piper any permanent right. *Answer :* Affirmed.

3. If the use of the water by Thomas D. Piper was permis-

sive, and not under a claim of right, down to the date of his death in 1880, then even though the user by subsequent owners may have been under claim of right, such user will not establish a right in the plaintiff, because it had not been continued for the period of twenty-one years prior to the diversion of the water from the pipe through the plaintiff's premises. *Answer :* Affirmed.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were :

(1) In refusing the 9th point of the plaintiff, and in the answer made to the same, which was as follows :

9. If the jury believe the testimony of Alfred Shutterly that L. E. Smith, J. R. Gregg and the other persons named by him, recognizing the right of Thos. Piper to the water from the spring with which his pump log was about that time connected by a lead pipe, entered into an agreement with said Piper whereby they acquired from him the right or privilege of using the surplus water from his pump log, then the continued use by them or the public as their successors, at the public fountain below Piper's place, under said agreement, could not mature into a right which would justify the defendants either at their own volition or by direction of the borough of Coal Centre, in depriving the plaintiffs as the successors to Piper's said right, or its tenants in said Piper property, of the first use of said water, and in so doing the defendants were guilty of a trespass, and the verdict should be for the plaintiff. *Answer :* Refused, the defendants do not claim title by adverse possession, they justify under the grant from Crothers of date February 17, 1894, and the fact that the plaintiff had no legal title to the use of the water but only a revocable license.

(2) In admitting the notes of the testimony of James Ward offered by defendants; in overruling plaintiff's objection thereto, and in allowing said notes of testimony to be read in evidence to the jury, which offer, exception and notes so read were as follows :

L. P. Frye, recalled:

Q. Did you subpoena James Ward ? A. Yes, sir. Q. When? A. Tuesday, one week ago. Q. In what condition is he ?

A. His foot is in bad order; not able to walk.   Q. He is not here?   A. No, sir; similar to the way he was last term of court.

Defendants' counsel present certificate of Dr. Letherman, sworn to on the 23d of November, 1895.

Counsel for defendants offer the official notes of the testimony of James Ward, who was a witness on the former trial of this case before the same court, and whose testimony was taken by S. C. Clarke, official stenographer of the said court, and ask that the stenographer be permitted to translate that testimony to the jury from his notes.

Objected to for the reason that the notes of testimony are incompetent as evidence in the case.   It not appearing that the circumstances come within the provision of the act of 1887, or any other law of the commonwealth, that entitles the notes to be read.

The Court: The testimony of Mr. Frye that the witness had been subpoenaed, and the sworn certificate of the physician that Mr. Ward is unable to be at court, so account for the absence of the witness as would prevent the court from issuing an attachment for him, and the objection is therefore overruled, and the notes of testimony admitted as asked for in the offer; exception for plaintiff and bill sealed.

(Testimony of James Ward at former trial read by the stenographer from his notes.)

(3) In refusing plaintiff's offer of evidence when Margaret Moore was on the stand and in sustaining defendants' exception thereto, which was as follows:

Margaret Moore, recalled:

" Q. Mrs. Moore, when you were here as a witness at the former trial of this case you were examined, I believe?   A. Well, I believe so.   Q. You stated, or testified, at that time about the privilege which Mr. Piper claimed to have secured from Colonel Jackman for the use of the water?   A. Yes, sir, privilege or right of way.   Q. State whether or not you used the word privilege, or any other language, by which you intended to convey the impression—

" Objected to as incompetent.

" The witness being called, and the notes of her testimony at the former trial having been read in part relating to a particular question and the word ' privilege ' used by her, the plaintiff

offers to prove by her that the word privilege was not used in any technical sense, or for the purpose of conveying the impression that it was a license for the use of the water to which she referred, but that, being an unlearned woman, the right to which she referred was a right or privilege of a permanent kind indicating an ownership in the water with the right to use it; that such was the effect of the language of Mr. Piper to her, to which her testimony then related.

"Objected to as incompetent and irrelevant, and not rebutting.

"Objection sustained; exception for plaintiff and bill sealed."

(4) In overruling plaintiff's offer to prove by John McNeil the contents of the notice of the watering trough, and in sustaining defendants' objection to the same.

(5) The court erred in refusing to allow plaintiff to prove by John Parshall in accordance with its offer the admission and statement of Mr. Hornbake, as burgess of the borough of Coal Centre, and in sustaining defendants' objection thereto, which offer, objection and ruling of the court thereon were as follows:

John Parshall, recalled:

"Plaintiff offers to prove by the witness that he had a conversation with Mr. Hornbake, at the time the acting burgess or representative of the borough of Coal Centre, about the time that the new pipe line was laid under the direction of the borough around the road to the spring in controversy, in which conversation Mr. Hornbake told him that their intention was only to lay the pipe in the spring on a level with the pipe which carried the water to the Beneficial Association property, and that there was no dispute of their right to use the water in common with the borough from this spring. The purpose is to show an admission of the parties under whom the defendants in their defense claim to have been operating and whose directions they were carrying out in asserting a higher and better right than that which the chief burgess of the borough said they claimed.

"Objected to as incompetent and irrelevant.

"Objection sustained, exception for plaintiff and bill sealed."

(6) In portion of charge, reciting same: [Adverse possession, as I have already said, or title by adverse possession,

presupposes that there was a grant originally made, and that the person who enjoys the right had acted in such a way, for twenty-one years, as to say to the owner of the spring, I have a right to this water against you and I am using this water because I have a right to use it against you. An adverse, exclusive and uninterrupted enjoyment of this water for twenty-one years, if made under a claim of right, with the knowledge and acquiescence of the owner, would afford a conclusive presumption of a grant or right. Now, that is where the case turns.] [6]

*O. S. Chalfant,* and *T. Jeff. Duncan,* for appellant:—By user the plaintiff acquired a vested right to have the water from the spring: Messinger's Appeal, 109 Pa. 285; 28 Am. & Eng. Ency. of Law, p. 1002; Strickler v. Todd, 10 S. & R. 63; Gehman v. Erdman, 105 Pa. 374; McGeorge v. Hoffman, 133 Pa. 397.

Statements made by the court during the delivery of the charge, or in answer to a point, which tend in any way to mislead or confuse the jury or to divert their attention from facts proper to be considered, or the use of language from which definite instructions may have been inferred, though not so intended, is error for which the judgment should be reversed: Fawcett v. Fawcett, 95 Pa. 378; Musselman v. E. B. & W. R. R. Co., 2 W. N. C. 105; Forker v. Sandy Lake Borough, 130 Pa. 134; Penna. Canal Co. v. Harris, 101 Pa. 93; Hart v. Borough of Girard, 56 Pa. 27; Harrisburg Bank v. Forster, 8 W. 304; Parker v. Donaldson, 6 W. & S. 132.

Rebutting evidence is that given to explain, repel, contradict or disprove facts given in evidence by the adverse party. It is a general rule that anything may be given as rebutting evidence which is a direct reply to that produced by the other side. It is a term applied to evidence given by the plaintiff to explain or repel the evidence given by the defendant. The testimony of McNeil was competent in rebuttal, and the rejection of it was error: Bouv. Law Dic.; 19 Am. & Eng. Ency. of Law, 1093, note; Roberts v. Young, 42 Pa. 439; Barclay v. Pursley, 110 Pa. 13; Cutbush v. Gilbert, 4 S. & R. 551.

The admissions of a party relative to the question at issue or the testimony submitted for or against him, are to be received in evidence, whether made before or after institution of the

468 KNIGHTS OF PYTHIAS, Appellant, *v.* LEADBETER et al.

Arguments—Opinion of the Court. [2 Super. Ct.

*suit:* Munger v. Silsbee, 64 Pa. 454; 1 Greenleaf on Evidence, secs. 171, 172; Simons v. The Vulcan O. & M. Co., 61 Pa. 202; Duncan v. Lawrence, 24 Pa. 154; Miller v. Eshleman, 43 Leg. Int. 499; Spencer v. Campbell, 9 W. & S. 32.

" Every admission . . . . is deemed to be a relevant fact as against the person by or on whose behalf it is made : " 7 Am. & Eng. Ency. of Law, 66 ; Galbraith v. Elder, 8 W. 81.

The admission offered to be proved was of a fact—an existing right at the time—and related to the business in which the burgess was acting for the borough. The declarations and statements of agents under such circumstances must be received in evidence against their principals : Laird v. Campbell, 100 Pa. 164; Reineman v. Blair, 96 Pa. 155 ; Myers v. Brice, 12 W. N. C. 87.

The same rule applies to the statements made by officers of corporations and by public officers. It has been held that the admission of an officer of his knowledge of a fact existing at the time through the result or consequence of some former act or business, is admissible as evidence of present knowledge on the part of the corporation represented by him : Harrisburg Bank v. Tyler, 3 W. & S. 373; 9 Am. & Eng. Ency. of Law, 349, and cases cited; Spalding v. Bank of Susq. Co., 9 Pa. 28; Union R. R. & Trans. Co. v. Rugal & Co., 73 Pa. 72; Myers v. Brice, 12 W. N. C. 87.

*J. I. Brownson, Jr.,* and *Todd & Wiley,* for appellees.

OPINION BY RICE, P. J., October 12, 1896 :

Undoubtedly if the persons named made the agreement with Thomas Piper specified in the plaintiff's ninth point, the continued use by them, or the public as their successors, of the surplus water under said agreement could not mature into a right which would justify them in depriving the plaintiff, as Piper's successor, of its right to the first use of the water ; but it would not follow as a necessary legal conclusion that the defendants were trespassers. This result could follow only if (1) Thomas Piper had acquired from the owner an irrevocable grant of the right to lead the water of the spring to his premises in the manner described in the testimony; or (2) the public or the borough acting for it were estopped to deny Piper's right, or (3) his

successors had acquired the right by adverse user. It is not seriously claimed, and after a careful perusal of the testimony we do not think it could be safely asserted that there is any proof by direct evidence of an irrevocable grant by Jehu Jackman to Thomas Piper of the right to lead the water of the spring to his premises. There is evidence that he claimed to have received such a grant, and that this claim was accompanied by such use of the water as might raise the presumption of a grant, but that is as far as the testimony goes in that direction. Therefore his right and that of his successors in title arises, if at all, from adverse user. But whether they, either exclusively or in common with others, had acquired the right in that manner, as against the owner, was a question involving matters of fact which were necessarily submitted to the jury. The facts testified to by Mr. Shutterly had a very important bearing on that question, but they are not all the facts pertinent to the question, and we cannot say that they were conclusive.

It is suggested in the point that the persons named recognized Piper's right. But assuming this to be true, how would that estop the borough from enforcing its rights under its grant of February, 1894, from J. B. Crothers, the owner of the spring? This has not been made clear to us. So long as those persons and their successors took the surplus water under the agreement referred to, of course they could not acquire title by adverse user as against Thomas Piper. But they could terminate their use of the water under the agreement at any time. No such relation was established between them and Piper, and no such privity between them and the borough is shown as would preclude the latter from acquiring from the owner of the spring such rights as were still vested in him and asserting them against the plaintiff. In other words,—to adopt the language of the defendants' first point,—the borough having purchased from Crothers the use of the spring, it was necessary for the plaintiff, in order to establish a right to the water of the spring as against the borough, to show that the plaintiff or its predecessors in title had acquired such right as against Crothers. In no view of the pleadings and the evidence would the court have been justified in affirming the plaintiff's ninth point.

Complaint is made not only of the refusal of the point but of the reason assigned by the learned judge therefor. Notwith-

standing the very earnest argument of the appellant's counsel we are of the opinion that the court committed no error in saying: "the defendants do not claim title by adverse possession, they justify under the grant from Crothers of date February 17, 1894, and the fact that the plaintiff had no legal title to the use of the water, but only a revocable license." Referring to the record of the testimony we find that in opening their case in chief the defendants offered the grant of 1894 as the basis upon which they, as agents of the borough, acted. In their bill of particulars they averred (1) that the plaintiff and its predecessor in title never had the right to the water of the spring asserted in the statement of claim; (2) that certain citizens originally obtained permission from the owner of the spring to lay a pipe to conduct the water to a public fountain in the town, and in consideration of being permitted to cross Thomas Piper's land they permitted him to construct a cut-off so as to draw water from the pipe, which right to use the water was to continue only so long as the said pipe should be maintained; and (3) that in order to acquire the permanent right to the use of the water of the spring which had theretofore been enjoyed by license merely, the borough in 1894 purchased the same from the owner by the agreement in question. This falls very far short of averring a prescriptive right acquired by adverse enjoyment. On the contrary, a permissive use is alleged in terms which seem to negative the existence of a right in any one, prior to the agreement of 1894, to take the water of the spring against the consent of the owner. The issue thus raised was not simply whether the plaintiff or the borough had the superior prescriptive right—assuming that it must be in one or the other—but whether the user by the plaintiff and its predecessor in title was adverse, and had ripened into a prescriptive right prior to the date of the agreement. The facts alleged had a direct bearing on that question, and we cannot see that the defendants have shifted their ground in now arguing that this was the theory upon which they were alleged. It is certainly the theory of their first point, the affirmance of which has not been assigned for error.

The remaining portions of the answers, taken in connection with the general charge and the answers to the other points, could not possibly be construed by the jury as an instruction

that the plaintiff had no legal title to the use. It is simply a statement of what the defendants asserted in that regard as part of their defense or justification, and it could not have been understood otherwise. The first assignment is overruled.

II. Proof having been made of the service of a subpœna on James Ward and of his inability to be present in court by reason of illness, it was not error to permit his testimony taken on a former trial of the case to be read: Thornton v. Britton, 144 Pa. 126; Com. Title Co. v. Gray, 150 Pa. 255; Perrin v. Wells, 155 Pa. 299. Therefore the second assignment of error could not be sustained, and, as we understood the appellant's counsel, it was abandoned on the argument.

III. Margaret Moore, a witness for the plaintiff, testified, in substance, that she had heard Thomas Piper say that, "he got the right of way, got the privilege," from Jehu Jackman to fetch the water down to his milk house for his own use. She further explained that she understood the privilege or right of way thus acquired to be irrevocable—a privilege that nobody could take away from him. She further illustrated her meaning of the terms used by comparing the right to the right of way acquired by a railroad company. On a former trial of the case she testified simply that she had heard Piper say that "he got the water privilege from Col. Jackman to pipe it down to his property." The defendant put in evidence this extract from her testimony for the purpose of contradiction. The plaintiff in rebuttal proposed to ask her the effect of, and the sense in which she understood, the language of Piper, and the sense in which she used the word "privilege" in her former testimony. This was objected to and the rejection of the offer is the subject of the third assignment of error. Little more is needed to justify the ruling of the court than a bare statement of the question. The offer was not to prove that her answers on the former trial were not correctly reported, nor to prove that she did not understand the questions, nor to prove that she was not given full opportunity to answer or to explain, nor to prove that there was anything in the context to qualify or explain the extract from her testimony which the defendants had offered. It is difficult to see then how the rejected offer could have been rebuttal of anything. It was in effect but a repetition of what she had testified to on the present trial as to the meaning

which she understood Piper to convey, and as she was heard fully upon that subject in her testimony in chief, the plaintiff has no just cause of complaint.

IV. The question as to the notice posted at the watering trough was not of the highest importance, but even if it were, the rejection of the offer to prove in rebuttal the contents of the notice was perfectly proper. The plaintiff had given in its case in chief the substance of the notice. The testimony of the witness probably might have been objected to upon the ground that it was hearsay; but it was not objected to and was not contradicted. Indeed, the defendants called a witness (Thomas T. Lilley) whose testimony as to the contents of the notice was substantially the same as that adduced by the plaintiff. There was therefore no dispute as to what the notice was and any further testimony as to its contents would have been merely cumulative and in rebuttal of nothing that the defendants had shown, unless it was different from that which had been given already. This, however, was not alleged in the offer. So far as the testimony of R. L. Leadbeter as to the purpose or object of the borough in putting up the notice would be rebutted by evidence of its contents the plaintiff had the benefit of the uncontradicted evidence heretofore referred to. The fourth assignment is therefore overruled.

V. The fifth assignment of error is to the refusal of the court to permit the plaintiff to prove the substance of a conversation between John Parshall, director or superintendent of the plaintiff association, and George S. Hornbake, burgess of the borough of Coal Centre, under which the defendants were acting, in which Hornbake is alleged to have stated that their intention was only to lay the pipe in the spring on a level with the pipe which carried the water to the plaintiff's property and that there was no dispute of the latter's right to use the water from the spring in common with the borough. It is to be observed that this was about the time that the new pipe line was being laid by the borough, but it is not asserted in the offer that the admission was made in the prosecution of the work in which the alleged trespass occurred. If the offered evidence was competent at all, it was because the burgess, as such, had authority to act, and hence to speak, for the borough in the matter. But the rights of the borough were defined by its contract, and the powers

of the burgess were such only as the statute gave him.   As burgess, Mr. Hornbake had no authority to surrender, or grant away, the borough's rights, and hence no authority to prejudice them by loose declarations not made in connection with any act complained of in the suit, or occurring in the performance of an official duty.   " The acts of the officers of municipal corporations in the line of their official duty, and within the scope of their authority are binding upon the body they represent; and declarations and admissions accompanying such acts as part of the res gestæ calculated to explain and unfold their character, and not narratives of past transactions are competent evidence against the corporation.   To render such declarations and admissions evidence, they must accompany acts, which acts must be of a nature to bind the corporation :" 1 Dill. Mun. Corp. par. 237, note, p. 322, and cases there cited.   According to this clear and accurate statement of the law, the evidence would not have been admissible for the purpose for which it was offered in a suit against the borough; a fortiori it was not admissible against these defendants.

VI.   The excerpt from the charge specified in the sixth assignment is complained of because it seems to imply that in order to acquire a prescriptive right by adverse enjoyment it is necessary to show express notice to, and acquiescence of the owner. Standing by itself it might be subject to that criticism.   It is to be observed, however, that there was no dispute as to the notoriety of the user or as to the knowledge of the owner.   Indeed the defendant's contention was that it was permissive, by virtue of a revocable license from the owner.   Thus his knowledge was a conceded fact, and it is fair to assume that the jury did not find against the plaintiff on the ground that the owner was ignorant of the user.   In another portion of his charge the learned judge instructed the jury in this plain language :  " Nor is there any dispute about the use of the water being a visible and notorious use.   It was used in a way that could be fairly described as visible and notorious; it was not a secret use so that the owner of the spring would have no way of knowing that the water was being used, but it was used in such a way as fairly meets the requirements of the law; that is, it was visible and notorious."   If there was any seeming error in the definition of adverse possession it was rendered harmless by this

positive instruction. Furthermore, in affirming the plaintiff's third and eighth points, especially the latter, the jury were clearly and accurately instructed that the use of the water by the plaintiff and its predecessors in title when they saw fit, without asking the leave of the owner of the spring and without objection by said owner constituted an adverse use. "It is always unsafe, as well as unfair to the trial judge, to select a single sentence from the body of his charge, sever it from the context and undertake to construe it by itself, without regard to what he may have said in the same connection, or in other portions of his charge:" STERRETT, C. J., in Irvin v. Kutruff, 152 Pa. 609, 612; L. V. R. R. Co. v. Brandtmaier, 113 Pa. 610, 619; Rogers v. Davidson, 142 Pa. 436; Smith v. Meldren, 107 Pa. 348; Malone v. R. R., 157 Pa. 430, 441, 442. Read with the context and the answers to the points, the instruction complained of could not have misled the jury.

We have purposely confined our discussion of the case to the questions which are fairly raised by the assignments of error. As none of them can be sustained the judgment is affirmed.