# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## James Neale, Exr. of William B. Neale, Deceased, Plff. in Err., *v.* William Engle.

In an action by a husband for work and labor of his wife, where the defense was that the family relation existed and there was no contract to pay,—*Held*, that evidence of admissions by the alleged employer to third persons that he was paying her a certain sum per week and that she must be paid, etc., were sufficient to carry the questions of fact to the jury.

(Argued October 12, 1886.  Decided November 1, 1886.)

October Term, 1886, No. 89, before Gordon, Trunkey, Sterrett, Green, and Clark, JJ.  Error to the Common Pleas of Armstrong County to review a judgment on a verdict for plaintiff in an action of assumpsit to recover for work and labor.  Affirmed.

The facts are stated in the following charge to the jury in the court below, by White, P. J.:

This is an action brought by William Engle alone.  He sues in his own name the estate of William B. Neale, to recover for the services of his wife.  The law allows a husband to maintain

NOTE.—It has been held that the relationship of grandparent and grandchild raises no presumption that services rendered are to be gratuitous, but that an implied contract exists in such case, unless the facts shown negative it.  Leidy's Appeal, 3 Pennyp. 195.  But it would seem that the circumstances should show an intention to pay.  Moyer's Appeal, 112 Pa. 290, 3 Atl. 811; Barhite's Appeal, 126 Pa. 404, 17 Atl. 617.

a suit alone for the services of his wife, unless certain things are done under our act of assembly giving the wife a remedy alone. We make this explanation to you, that you may have a proper understanding of the relations of the parties to the suit.

The plaintiff, William Engle, claims from the estate of William B. Neale, compensation at the rate of $1.50 per week from August 1, 1877, to April 9, 1881, the date of the death of decedent, for the services of Mary Engle, his present wife, at the house of the deceased during that time, in pursuance of an alleged express contract with said deceased to pay such rate for her services. It is claimed by the plaintiff that Miss Mary McSparren (that was her name then) was employed in 1872 to go and live at the house as a servant for the deceased for the wages of $1.50 per week; that she continued to serve there in pursuance of that contract and of a new one of the same character after she was married to the plaintiff in 1875, until the death of the deceased in April, 1881.

It is well-settled law, as well as common sense and common honesty, that between strangers or persons not occupying a family relation to each other, when services are rendered by one and received by another, there is an implied assumption by the person receiving to pay what the services may be reasonably worth. That is between strangers. That is what is called an implied contract. And while, as we remarked, such inference or implication arises, usually, when services or labor is performed between strangers, yet facts and circumstances may be shown even to rebut such implication.

Between parents and children and between persons occupying that relation to each other (that is, the family relation to each), no such implication arises in the absence of an express contract between the parties to pay. The law in this is founded upon the common experience of mankind; and in the language of one higher in authority than we are: "For services rendered by members of a family to each other, no promise is implied for remuneration, because they were not performed in the expectation, by either party, that pecuniary compensation would be made or be demanded. No action can be maintained for such services when no express contract or agreement has been made between them to pay for them." This is too well settled in our law to be denied, and it is not required to further comment as to this.

It is again stated: "The nearer the relationship the less ex-

pectation of payment and greater strictness tó overcome the presumption. And when the parties are members of the same family the relationship excludes the implication of a promise." That is to say that where a son lives with his father, making his home there, as a member of the family, and continues after he has become twenty-one years of age, and his father dies, or even in his father's lifetime, he cannot recover for labor services .rendered to the father, unless he proves there was a contract express between him and his father for such payment. The same rule obtains where a person is in the family in the relation of a son or a member of the family and performs services for the head of the family. A grandson, for instance, or a person not a blood relation, may be adopted into the family and thus occupy the family relation; to recover for services rendered to such family he must prove an express contract, to the satisfaction of the jury to whom such claim is submitted. The degree of proof and the kind of proof, it is proper for us to explain, is different in different kinds of cases. Where there is a contract, and where there is a claim made by a son or a person occupying that relationship, against the estate of a father, for damages or for money for failure to convey a tract of land as was alleged to have been agreed upon, to entitle such son or such person to recover, he must submit to the court and jury a clear, direct, precise, and unambiguous contract, the contract and the terms of it having been made when the parties were face to face. That is the law.

[Where, however, the action is brought by a person occupying this relation, to recover for services or labor rendered, the law does not make it absolutely necessary for such contract to be proved by testimony of one who heard it made, face to face. Such contract may be proved and established by the declaration made by the party sought to be charged or by the decedent, and in such a case as we have in hand, from which the jury may find, and the court may submit to the jury to find, that such contract was actually made.] Before, however, in cases of this kind a jury will return a verdict for the claimant, they must be satisfied by clear and satisfactory evidence that the contract was actually made as distinguished from an implied contract. That is the law which will control you in your investigation of the facts in this case.

It has been properly said by the supreme court, and quoted

in your hearing, that claims of this character, that is, claims brought by a son against the estate of a deceased father, ought properly to be considered with great care, and examined cautiously, not with prejudice on one side or the other, but with that prudent care that claims among those in the family relation ought to be examined. This being the law, what is the situation?

It is claimed, and we believe it is not disputed, that William Engle was the grandson of William Neale, deceased; that sometime in 1864 or thereabouts, being then a boy, he went to live with his grandfather, going to his house and making his home there from some time after the event of the death of his stepmother. You will remember how that was, and you will discover whether that is true; whether plaintiff was with the grandfather; whether he lived there in the family relation with William Neale, or as a member of his family.

It is alleged again that in 1872, with the authority of William Neale, the plaintiff went and hired Mary McSparren to come and live at Neale's house as a servant, to do work there for which she was to receive $1.50 per week; that she came and lived there, performing such work at such rate, and this continued with probably a little absence, the jury will remember, until the marriage of Miss McSparren with the plaintiff in this case, who now sues for her services from the year after the date of that marriage in 1877, until the date of the death of Mr. Neale.

Now we will say here that if you find that William Engle was the grandson and made his home and was a member of the family of William Neale at the time of the marriage with his present wife, that thereafter the contract existing previously with her would cease; she would then become the wife of Mr. Engle, her services belonging to him; and if he continued to make his home there as a member of the family of Mr. Neale, then his wife's services would belong to him; it was his obligation to procure her a home, and his home would be her home; and to entitle him to recover for her services it would be necessary for you to find that the contract relation, if one existed before between Miss McSparren and Mr. Neale, was continued and did continue until the death of Mr. Neale, the decedent.

We think this is the correct view to take of this matter, because in all contracts there must be mutuality; and if the family relation existed between William Engle and William Neale,

there was no obligation upon William Engle to continue to remain at the house or to allow his wife to remain at the house of William Neale. Such being the case, the obligation upon the other side to pay would not exist, in the absence of an express contract upon the part of William Neale to pay for such services.

Now then, how was this after they married in 1875? If they continued to live at Neale's what was the condition of things existing betwen them thereafter? Was the contract relation existing previously, if one did exist (and that is for you), continued after the marriage, and did it continue until the death of William Neale? If it did, and from the evidence you are satisfied that the contract did exist and did continue, then the plaintiff would be entitled to recover the contract price for the services of his wife during that period. How is this matter?

[The plaintiff has submitted in evidence here a variety of testimony in this respect. He has called a Miss Mathews who testifies to being present at the time that contract occurred in 1872, who stated that the contract was to continue as long as she lived there. Then they have called Mr. Peter Smith, who testifies to a conversation with William Neale, wherein, in speaking of his condition and circumstances about his home and about Mrs. Engle, he said he was paying her $1.50 per week. And other witnesses were called who testified to hearing the old gentleman say that William and his wife must be paid; sometimes that Mary must be paid or must be well paid. Now these are circumstances and declarations proper for you to consider, to determine whether an express contract was actually made and existed between them after the marriage with the plaintiff.] If you find that such contract was actually made, then, of course, as we remarked, the plaintiff is entitled to recover. And then, I should have said that there was testimony to the payment of some money. Some witness was present when a certain amount of money was paid. If we have omitted any parts, you will remember them.

On the other hand, to rebut that, the defendant denies that there was such a contract existing, and setting up as against the right to recover that the family relation existed, and has offered some evidence as to the means and capacity of Mr. Neale to pay, and has given some evidence as to his promptness in discharging his indebtedness; and they have offered evidence of a will in

which a legacy of $300 was given to the plaintiff, from which they argue that those expressions about paying did not refer to a contract, but referred to a voluntary intention to compensate finally as he saw fit by will. You will survey all these facts and then say how it was. Was the contract actually made for $1.50 per week as claimed by the plaintiff? From the evidence before you did it actually exist, or is it inconsistent with the fact that William Neale died without discharging an obligation resulting from any contract? How is it?

After the jury retired the court took a recess till 1 o'clock P. M. In the meantime, before the court reconvened, the jury agreed upon and sealed up their verdict and separated, going to their dinners. When the court reconvened the verdict was taken from the jury, they being in the box to return the verdict. Then the verdict was opened by the court; it read only: 'We find for the plaintiff;' whereupon, the court told the jury it was necessary for them to return the amount they found owing the plaintiff. Thereupon the jury replied to the court that they had no statement of claimant with them, but found for the entire claim of plaintiff; whereupon the court referred to the record and told the jury that plaintiff's claim was from August 1, 1877, to April 9, 1881, 191 weeks, at $1.50 per week, which amounted, after deducting credits allowed by plaintiff on July 2, 1884, when the case came into this court, to $247.75; and that if they allowed the full claim, this would bear interest from that time to this date, making $24.52, being in all $272.27; that if they desired, they could retire and calculate it or confer together in the box, which latter they did, and they told the court that was the correct amount they desired to find. Whereupon the prothonotary was directed by the court to take the verdict which is recorded, and to which defendant's counsel excepts, which exception is allowed by the court, and a bill sealed here as desired.

Plaintiff, *inter alia,* presented the following point:

The admission of William Neale that he was paying Mrs. Engle $1.50 per week is sufficient evidence from which the jury may find a contract (in connection with the other evidence in the case), although the said admission was not made in her presence or communicated to her.

*Ans.* Affirmed.

Defendant presented the following point:

The court is respectfully requested to charge the jury that, under all the evidence in the case, the plaintiff cannot recover, and their verdict must be for the defendant.

*Ans.* This point is refused.

The assignments of error specified, *inter alia,* the portions of the charge inclosed in brackets; the affirmance of plaintiff's said point; the refusal of defendant's said point and the action of the court in directing the jury, after they had returned a sealed verdict, to again consult and ascertain the amount of the verdict as follows, *viz.:* [setting out the portion of the statement of the case following the charge of the court.]

*M. F. Leason* and *Calvin Rayburn* for plaintiff in error.

*J. R. Henderson* and *W. D. Patton* for defendant in error.

PER CURIAM:

The court below properly determined that the questions arising in this case during the trial were questions of fact, hence, properly referable to the jury.

The judgment is affirmed.