# Blake *v.* Hunsberger, Appellant.

*Contract—Sale—Warranty—Horse—Exhibition of horse in presence of jury—Evidence.*

1. In an action to recover back the purchase money of a race horse bought under a warrant of soundness, the appellate court will not review the discretion of the trial judge refusing to allow an exhibition of a horse in the presence of the jury on a street in front of the courthouse, so as to determine whether or not he was a "roarer," where it appears that the conditions of weather, season and place were entirely different from those existing when the defect was discovered.

*Practice, C. P.—Trial—Verdict—Reformation of verdict—Jury—Discretion of court.*

2. Where the jury returns a sealed verdict overnight in favor of plaintiff without naming the amount, and on the following morning the court sends the jury back to find the amount with interest, and the jury returns with the amount calculated, such amount is properly entered as the verdict, if it appears from an examination of the jury by the court, that the jury had determined on the night before the exact manner in which the amount of the verdict was to be computed, and

that they had during their separation not rediscussed the amount of damages in the light of anything that had in the meantime happened.

Argued Dec. 8, 1910. Appeal, No. 149, Oct. T., 1910, by defendant, from judgment of C. P. Montgomery Co., Oct. T., 1909, No. 117, on verdict for plaintiff in case of John Blake v. J. Newton Hunsberger. Before RICE, P. J., MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit to recover back purchase money of a horse sold under a warranty of soundness. Before SWARTZ, P. J.

At the trial the defendant made the following offer:

Mr. Bean: Before going into this examination we offer to show the animal in question to the jury and in the presence of the court. The horse is here in town with its present owner, and we would like to show the horse at speed with and without harness, for the purpose of showing the sound condition of the animal.

The Court: What does the plaintiff say about this?

Mr. High: I have this to say about that. I appreciate the purpose of an offer of that kind. In the first place, we know that the unsoundness of this horse is not a matter of physical examination or matter of mere observation. It is a thing that only demonstrates itself when the horse is put to a severe test, such as was given to the horse on the track at Lansdale in July. We are perfectly willing, and would always be willing, if this horse were submitted to the kind of tests which, under our testimony, is the kind that demonstrates and manifests this particular unsoundness, or if the proposition were to take this horse over to the Lansdale track and try him, not a square or two, but trot the horse three half miles, as we did on that day, at a certain rate of speed, and permit Dr. Hunsberger to drive the horse one lap, and permit Mr. Rea to drive the horse another lap ,we would welcome the proposition, because that is the test that we submitted him to, and under those conditions we claim he manifested this unsoundness.

The Court: I do not think it would be much of a test for the jury to look at the horse unless they could see the horse in action.

Mr. Bean: We want the horse in action. We want this horse driven at speed, and, of course, Mr. High well knows that at this season of the year that any horseman will testify that this horse is not in condition for racing. There is no track in condition in this part of the country that the horse could be sent three miles. No race horse could go three miles on any track at this season of the year. They have to have ninety days of training before they are sent into a race. We are here to show this horse at speed, to show that there is no noise; that he does not suffer with any disease, and so far as roaring is concerned.

The Court: Have we any track that you can trot him on?

Mr. Bean: I will find out. When they sold the horse at Bull's Head they took the horse at speed, gave him the regular speed.

The Court: That is a matter for argument before the jury if he had the regular test down there. We will not argue that now. I do not see that you are in condition to give any demonstration that, perhaps, would be of appreciable value to the jury. If you can, I am perfectly willing if the jury wants to make the test, that they shall have the opportunity. If you have no track or no place to speed the horse, then I do not see how you can make the test.

Mr. Bean: We would be glad to take this horse out to the boulevard, where there is a long stretch, with no cross streets, where the horse could be seen at speed, in the presence of Mr. Ludwig and Mr. White and Mr. Hartman and those trainers, where the horse would be given every opportunity that would be given to a horseman attempting to purchase a race horse in this community to-day.

Mr. High: The answer to that is this: The horse may have, and we will contend that the testimony shows, this particular unsoundness.

The Court: Unless you can agree upon some place

where the horse can be speeded, I do not think the demonstration is a proper one. If you can agree upon some place or show any place where the horse can go to the track and be speeded, I will allow the jury to have a demonstration, but on the roadway or down here on the streets or on the boulevard out here I do not know as that would be proper. I am not able to say whether that would be the proper test or not. I am not going to experiment about it. It is an unusual thing to do. You have made the offer. Mr. High has made his answer to it that he will not agree to it unless there be some track where the horse can be speeded to his capacity.

Mr. Bean: We could not put this horse, or any other horse on the track, because it would ruin the horse. A race track in the winter——

The Court: Then it ought not to be done. A man will not allow his horse to be used that way.

Mr. Bean: It could not be done.

The Court: Go on with the case. If this horse was to be seen he was to be seen in the presence of both parties.

Mr. Bean: We renew this offer at this time to show this horse to the whole jury in the presence of both parties.

Verdict and judgment for plaintiff for $303.79. Defendant appealed.

*Errors assigned* were (1) ruling on defendant's offer; (2) in refusing a new trial because of change in substance in verdict.

*Theodore Lane Bean*, for appellant.—Under the evidence in this case appellant contends that the court erred in its refusal to allow this horse to be shown under the circumstances offered, and that, if such an exhibition had been made, the jury could not have found a verdict for the plaintiff.

All the authorities agree that the only verdict is that which the jury announces orally in court, and which alone is received and recorded as the jury's finding: Kramer v.

Kister, 187 Pa. 227; Wolfran v. Eyster, 7 Watts, 38; Fisher v. Farley, 23 Pa. 501; Reitenbaugh v. Ludwick, 31 Pa. 131; McConnell v. Linton, 4 Watts, 357.

*Samuel H. High*, with him *John Faber Miller*, for appellee, cited as to the rejection of the offer: Beaver v. Whiteley, 3 Pa. C. C. Rep. 613.

Cited as to the form of the verdict: Com. v. Price, 10 Kulp, 41; Kramer v. Kister, 187 Pa. 227; Smith v. Meldren, 107 Pa. 348; Neale v. Engle, 4 Sadler, 1.

OPINION BY BEAVER, J., March 3, 1911:

The assignments of error in this case raise but two questions, which appealed to the discretion of the court.

The first is as to the refusal of the court to allow an exhibition of the horse, whose soundness was the issue involved in the case, to the jury on the streets immediately in front of the courthouse, so as to have him trotted for the purpose of demonstrating whether or not he was what is known in horse parlance as a "roarer." The court was entirely willing to have this exhibition made, if the plaintiff's counsel assented to it. The proposition was made in open court, and refused by the counsel for the plaintiff on the ground that the difference in season, the difference in the condition of the horse, the difference in the place where he was to be exercised, and the changed conditions generally, would not exhibit what was shown or alleged to be shown as to the condition of the horse, when the alleged defect was testified by some of the witnesses to have been discovered, or at least manifested. The defendant admits in his argument that "no race track at the time of the trial was in condition to use, nor could a race horse be driven three miles at speed in the cold weather." When the proposition was made to have the examination or trial of the horse in the presence of the court and the jury, the question was submitted to the plaintiff, whose counsel said: "I have this to say about that. I appreciate the purpose of an offer of that kind. In the first place, we

know that the unsoundness of this horse is not a matter of physical examination or matter of mere observation. It is a thing that only demonstrates itself when the horse is put to a severe test, such as was given to the horse on the track at Lansdale in July. We are perfectly willing, and would always be willing, if this horse were submitted to the kind of tests which, under our testimony, is the kind that demonstrates and manifests this particular unsoundness, or if the proposition were to take this horse over to the Lansdale track and try him, not a square or two, but trot the horse three half miles, as we did on that day, at a certain rate of speed, and permit Dr. Hunsberger to drive the horse one lap, and permit Mr. Rea to drive the horse another lap, we would welcome the proposition, because that is the test that we submitted him to, and under those conditions we claim he manifested this unsoundness." It seems plain to us that the conditions were so entirely changed from those which prevailed at the time the alleged unsoundness was supposed to be discovered that the court exercised its discretion judiciously in refusing to have the exhibition proposed by the defendant on the streets of a populous city, at a time when the conditions were the exact opposite of those which prevailed when the trial took place at which the alleged unsoundness was supposed to be manifested.

The second assignment is as follows: "The court erred in refusing to grant a new trial, because the verdict for $303.79 was a change in substance from a sealed memorandum of verdict 'We find for the plaintiff,' the jury having separated, retired and deliberated, after the latter finding."

The docket entry in relation to the verdict is as follows: "March 24, Jury rendered verdict in favor of plaintiff for $303.79 damages and six cents costs." This, as is held by all our cases, is the verdict.

It appears from the proceedings in court, as reduced to writing by the stenographer: "The jury rendered a verdict for the plaintiff. The Court: You find a verdict for

the plaintiff, but you do not say what amount.  You have to go back and determine what the amount is.  The jury retired.  At 10:25 A. M. the jury rendered a verdict for the plaintiff for $293.50, with interest to date and costs.  The Court: Have you computed the interest?  The foreman: No, sir.  The Court: Go back and compute it.  The jury retired.  At 10:50 A. M. the jury came into court.  The Court: Gentlemen of the jury: You have addressed the following communication to the court: 'Will you please inform the jury of the date of the sale of the horse at Bull's Head Bazaar?'  The answer of the Court is, my recollection is that it was about August 24th, 1909.  I have conferred with counsel, and they seem to agree that that is about the date.  Of course, the evidence is for the jury.  You are not bound by my recollection, nor are you bound by the recollection of counsel.  The evidence is for you, and you must find the facts yourselves.  The jury retired.  At 11:10 A. M. the jury rendered a verdict in favor of the plaintiff for $303.79."  The court said to the jury: "Gentlemen of the jury, I want to ask you a few simple questions, because they may be of value to me hereafter in the consideration of this case.  Your foreman or anyone of your number may speak for the jury, but, if your foreman, or anyone of your number speaks for the jury and answers the questions, any other juror, who does not agree with the answer that is given, also has a right to give his answer to the question.  You sealed your verdict last night, and separated.  Did you, before you separated, discuss the question of damages, and agree upon the method of computing the damages?  The foreman: We did not compute the interest.  We did talk of the difference between the cost and the selling price of the horse.  It was our thought, in handing in a verdict for the plaintiff, to give him the difference between the cost and the selling price of the horse.  The Court: You have heard the answer.  Do you all agree to that?  Did you leave anything undone except the mere calculation of the amount, and do that this morning?  Was that all that remained to be

done? A juror: That was all. The Court: You simply
calculated according to the terms of your agreement last
night. A juror: Yes, sir. A juror: If I understand you
mean that that was deferred business to be done this morn-
ing. The Court: No, sir, I do not mean it in that sense.
I mean this: Did you go so far in your deliberation and
your agreement that you had everything decided, the
amount of the damages, and how you were to compute,
and that you were going to compute those damages by
taking $550.00, deducting $270.00, and then add $13.50.
Did you discuss that, and did you agree last night, before
you separated, upon a verdict upon that basis? A juror:
Yes. The Court: You all answer, yes. A juror: Yes. The
Court: This morning, when you reassembled, did you dis-
cuss the question of damages? A juror: Only when you
sent us in. The Court: I mean when I sent you out. You
were out about twenty minutes. A juror: Yes, sir. The
Court: I want to know whether, during those twenty min-
utes, you discussed the question of damages, and then
determined upon the amount of damages under a new dis-
cussion. A juror: We only figured the difference what it
would be, so as to give the amount. The Court: I ask
that question, because you were out twenty minutes. I
cannot understand how it would take you that long to de-
duct $270.00 from $550.00 and then add $13.50 to it. I,
therefore, ask you whether you discussed and considered
anew the question of damages this morning. A juror: No,
sir, we only figured and wrote the answer. The Court:
That was all? A juror: Yes, sir."

It would seem from this extended colloquy between the
court and different members of the jury that the court had
been extremely careful in ascertaining whether or not the
jury had been led by anything that occurred during their
separation to a rediscussion or a reascertainment of the
damages. It clearly appears from their answers that no
such discussion occurred and that their action in the jury
room was simply a reducing to figures the damages upon
which they had agreed in the first instance before their

separation. The court was careful, therefore, to inform itself as to all the facts in the case, so as to exercise fairly and intelligently its discretion in regard to the granting of a new trial. In this we think everything was done that could fairly be done to inform the mind and conscience of the court, and that, in the disposal of the question finally of the application for a new trial, no injustice was done and there was no violation of the exercise of the judicial discretion of the court in the premises.

The case was laboriously tried and was submitted to the jury in a thoroughly exhaustive manner by the court, which is not in any degree questioned by the appellant, and we are, therefore, of opinion, based upon authority fairly representative in Kramer v. Kister, 187 Pa. 227; Smith v. Meldren, 107 Pa. 348, "The Court had power to put the verdict in proper form;" Neale v. Engle, 4 Sadler 1 (the last two cases are specially in point and the facts are practically similar to those here presented), that the defendant has no reasonable ground of complaint.

Judgment affirmed.